# Fishkin Lucks

Zachary W. Silverman
zsilverman@fishkinlucks.com

August 4, 2020

via email and ECF
Honorable Mary Kay Vyskocil, U.S.D.J
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, NY 10007
VyskocilNYSDChambers@nysd.uscourts.gov

      Re:     Denimal, et al. v. Prodigy Network, LLC, 1:20-cv-00968

Dear Judge Vyskocil:

Pursuant to the notice of initial pretrial conference, ECF No. 18, the parties submit this joint status letter.

**1.    A brief statement of the nature of the case, the principal claims and defenses, and the major legal and factual issues that are most important to resolving the case.**

Plaintiffs' statement:

This is a breach of contract action in which plaintiffs seek the return of their investments in defendants' real estate project, including contractual interest.  More specifically, plaintiffs invested in defendants' real estate project in return for the promise that they could redeem those investments, receiving back their principal plus an 18% pre-tax annual compounded return. Plaintiffs made proper redemption requests pursuant to the parties' agreements, but defendants have refused to honor those redemptions.

Defendants' apparent justification for declining to redeem plaintiffs' investments is that the parties' agreements permit defendants to "suspend dealings."  But the parties' agreements state in no uncertain terms that if a suspension of dealings is declared, "there will be no dealings."  Here, however, it is undisputed that defendants continue to engage in any number of dealings (aside from honoring redemption requests).

This exact same issue has already been decided in favor of another investor and against defendant Prodigy Network, LLC, with respect to an investment in the same project, pursuant to the same investment documents, with identical material terms.  Plaintiffs annex here a decision and order of the Supreme Court of the State of New York, New York County, Commercial Division, in the matter styled *Avemar 2318 Corp. v. Prodigy Network, LLC*, Index No. 655357/2019, in which that court squarely rejected Prodigy Network, LLC's "suspension of dealings" argument.

Honorable Mary Kay Vyskocil, U.S.D.J
August 4, 2020
Page 2 of 5

Annex A.  Plaintiffs respectfully submit that this decision has a collateral effect with respect to their claims against Prodigy Network, LLC, and that it is at the very least strongly persuasive with respect to plaintiffs' claims against 1234 W. Randolph NewCo, Inc.

For these reasons and those appearing in plaintiffs' pre-motion letter, ECF No. 20, plaintiffs are prepared to move for summary judgment without any discovery because the plain language of the parties' agreements is dispositive of this dispute.

Defendants' Statement:

Plaintiffs are investors in Defendant 1234 W Randolph NewCo, Inc. ("NewCo"), a real estate investment vehicle managed by Defendant Prodigy Network LLC ("Prodigy"). Prodigy and NewCo are currently involved in the acquisition of property for and development of a Standard-branded luxury hotel near the United Center in Chicago (the "Project").

Prior to investing in NewCo (and thus the Project), Plaintiffs received marketing materials touting a potential 14-18% return on their investment after 5-7 years. The Supplement to the Offering Memorandum (the "Supplement") stated that the Investment Term for the Project would last a minimum of six years and as long as eleven, during which the investors might see no return at all. And the Offering Memorandum ("OM") itself also made clear—as part of a 15-page disclosure of "risk factors"—that the investment was "speculative in nature" and that there was a "possibility of partial or total loss of capital" even after that period of time had passed.

Having thus been fully informed regarding the potential upsides and downsides of the Project, the investors each entered into a Subscription Agreement ("SA") pursuant to which they contributed funds to NewCo. In addition to incorporating the terms of the OM and Supplement, the SA also included a right of "voluntary redemption," pursuant to which an investor could redeem her investment, along with 18% interest, within 12-18 months (as opposed to the six-year Investment Term). Needless to say, this right was highly circumscribed; indeed, the OM gave Prodigy the unfettered discretion to suspend or postpone such a redemption request where, *inter alia*, it was of the "opinion" that "disposal of the Fund's assets would not would not be reasonably practicable or would be seriously prejudicial to non-redeeming [i]nvestors" or where such "redemption of Interests would cause a breach or default" in certain agreements.

This dispute arose after Plaintiffs sought to redeem their investments. It is undisputed that Prodigy suspended those redemptions on the grounds that paying out those investments plus interest at that time would prejudice other investors and almost certainly doom the Project itself (as the money was needed to buy the property and commence development). Prodigy told Plaintiffs as much at the time. Plaintiffs nonetheless sued on the grounds that they had the "unconditional" right to redeem their investments at an 18% rate of interest, and that, if Prodigy wished to suspend redemption requests, it had to suspend *all* business transactions, including any further development of the Project or payments to third parties.

This reading is flatly contradicted by numerous provisions in the OM and Supplement. Take, for instance, the provision above allowing Prodigy to suspend redemptions where payment of same would cause Prodigy to breach its payment obligations to certain third parties. Plaintiffs' reading

Honorable Mary Kay Vyskocil, U.S.D.J
August 4, 2020
Page 3 of 5

would *prohibit* Prodigy from satisfying those third party obligations, thus rendering that provision completely meaningless and resulting in the exact breach against which the provision was designed to guard. Plaintiffs' reading is also commercially absurd. In effect, Plaintiffs are claiming a guaranteed right to collect in *one year* what they were told was the top potential rate of return for their "speculative" investment after *five to seven years*, as well as the right to completely shut down a $100 million development Project unless they get it, harming dozens of other investors in the process. That cannot be correct.

In defense of their position, Plaintiffs point to Justice Schecter's recent opinion in *Avemar 2318 Corp. v. Prodigy Network, LLC*, Index No. 655357/2019. They claim that decision has collateral effect here, at least against Prodigy (NewCo was not a party to that case). Defendants respectfully disagree, and submit that the pro forma *Avemar* decision—which failed to address any of Prodigy's substantive arguments regarding the inability to square Plaintiffs' favored interpretation with numerous contractual provisions or the black-letter requirement that contracts be construed in commercially reasonable fashion—was in error. Prodigy is in the process of appealing that decision to the First Department, and believes there is a strong chance of reversal.

Accordingly, Defendants do not believe that the *Avemar* should be given preclusive effect here. Defendants are prepared to move forward with discovery and to file a dispositive motion at the earliest opportunity. Alternatively, should this Court believe that it is bound by the decision in *Avemar*, Defendants would, as a matter of judicial efficacy and economy, move for a stay of this action until Prodigy's appeal in the *Avemar* case is resolved. Should this Court wish to review the summary judgment briefing from the *Avemar* case so as to assist it in making that determination, the papers filed by the parties are attached hereto as Annexes B-G.

2.     **A brief statement by the plaintiff, or by the defendant in removed cases, as to the basis of subject matter jurisdiction and venue, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction and venue.**

<u>Plaintiffs' statement:</u>   Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332(a) because there is more than $1,800,000 in controversy, and there is complete diversity.   Plaintiffs' citizenship is as follows:

- Francois Denimal: Singapore
- Michelle Denimal: Singapore
- Riad Chowdhury: Singapore
- John Friedman: Singapore
- Raquette View Limited (a corporation): Bahamas (both place of incorporation and principal place of business)
- Jailineli Limited (a corporation): British Virgin Islands (both place of incorporation and principal place of business)

Defendants' citizenship is as follows:

- 1234 W. Randolph NewCo, Inc. (a corporation): Delaware (place of incorporation) and New York (principal place of business)

Honorable Mary Kay Vyskocil, U.S.D.J
August 4, 2020
Page 4 of 5

- Prodigy Network, LLC (limited liability company): upon information and belief, none of its members are foreign

Venue is appropriate for three reasons.  First, defendants submitted to this venue pursuant to the agreements upon which plaintiffs sue.  Second, defendant 1234 W. Randolph NewCo resides in this judicial district and both defendants reside in New York.  See 28 U.S.C. § 1391(b)(1), (c)(2).  Third, venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred here.

Defendants' statement:  Defendants do not contest jurisdiction or venue at this time, but reserve their right to contest Plaintiffs' assertion of subject matter jurisdiction should Defendants conclude that such jurisdiction is lacking at some future point during the litigation.

**3.      A statement of procedural posture.**

No motions have been made.

For the reasons discussed above and in their pre-motion letter, ECF No. 20, plaintiffs contemplate making a motion for summary judgment as soon as possible.  In the interest of conserving party and judicial resources, plaintiffs intend to ask the Court for a discovery stay pending the outcome of that motion.

For their part, Defendants seek to move forward with this litigation or, if this Court believes the *Avemar* decision has preclusive effect as to one or both Defendants, to move for a stay of this litigation in its entirety pending resolution of that case on appeal. Although Defendants believe that the unambiguous language of the relevant agreements unequivocally supports their position, they request that discovery be conducted prior to dispositive motion practice, in accordance with normal procedure. Not only may there exist contemporaneous correspondence or other documentation evidencing the parties' mutual understanding of the deal they struck, but Defendants have a right to test, under oath, each Plaintiff's contentions regarding their understanding of the agreements into which they entered.  It should be noted that no discovery was conducted in connection with the *Avemar* case.

The parties have exchanged initial disclosures, and no other discovery has taken place.  Plaintiffs' position is that no further discovery is necessary and the case can and should be resolved on summary judgment now, though plaintiffs reserve the right to engage in further discovery should the Court disagree.  As stated above, Defendants disagree and would like to immediately commence document and deposition discovery.

The parties have engaged in good faith settlement discussions, including pursuant to Your Honor's notice of initial pretrial conference, ECF No. 18, but have thus far been unable to resolve the case.  The parties do not believe that a settlement conference is appropriate at this time, but they will advise the Court if circumstances change.

**4.      Any other information the parties believe may assist the Court in resolving the action.**

00076580.3

Honorable Mary Kay Vyskocil, U.S.D.J
August 4, 2020
Page 5 of 5

There is none, although the parties will certainly keep the Court apprised if any arises.

We look forward to meeting with Your Honor on August 11.

Respectfully submitted,

FISHKIN LUCKS
Attorneys for Plaintiffs


Zachary W. Silverman

WINSTON & STRAWN LLP
Attorneys for Defendants

/s/ George E. Mastoris


George E. Mastoris